This third ticket and the circular accompanying it were discov-- ered by the Gardiner people. A protest was made by them at the polls against the use of what was termed a "bogus ticket." Objection was made to its being delivered with the other two tickets to the voters by the inspectors. The inspectors were equally divided upon the question, and the objection was not sustained. The purpose of this third ticket, properly characterized as "bogus," was to deceive and defraud the supporters of the Gardiner ticket, and to trick them into voting for John Evans as the Republican candidate for alderman,—a nonresident and not a member of the Republican party of the ward,—instead of voting for their candidate for alderman, John J. Evans. It must be assumed that the fraud was successful, in that it did deceive voters, two of whom testify that they inadvertently voted the fraudulent ticket. The legal effect of this fraud upon the actual result of the primary presents an embarrassing question. Whether, upon the trial of an issue to determine the right to the nomination, the nine John Evans votes intended for John J. Evans, if the fact were made to appear, should be counted for John J. Evans, or would have to be wholly rejected, or the election adjudged void on account of the fraud, are questions which cannot be determined in this proceeding. I have concluded to adhere to the plain letter of the statute, which requires the clerk to canvass the vote as it appears upon the statements filed by the inspectors. The alternative writ should be vacated and set aside, with costs.

Writ vacated and set aside, with costs.

---

(36 Misc. Rep. 727.)

### In re WARD.

(Supreme Court, Special Term, New York County. January, 1902.)

1. PRIMARY ELECTIONS—PARTIES SUBJECT TO LAW.

   Primary Election Law 1899, c. 473, § 13, provides that no party shall be subject to the provisions of this act, unless they elect to come under it, which cast less than 3 per cent. of the entire vote of the state for governor at the last preceding election. *Held* that, the Social Democratic party in 1900 having cast less than 3 per cent. of the entire vote of the state, the primary election law did not apply to it.

2. SAME.

   The Social Democratic party, having cast a vote of more than 10,000 in the last state election for governor, has a right to nominate by a convention held under the election law of 1896, c. 909, art. 3.

3. SAME—NECESSITY OF PRIMARIES.

   Where a political party has no voters in a certain territory forming a part of a congressional district, that it neither advertised nor held primaries in such portion does not affect its right to nominate by convention for congress.

Application of Christopher Ward for a writ of mandamus to the board of elections to compel the printing of his name on the official ballot as the candidate of the Social Democratic party as congressman. Writ granted.

Hillquit & Hillquit, for petitioner.

George L. Rives, Corp. Counsel, for board of elections.

SCOTT, J. The petitioner asks for a writ of mandamus directing the board of elections to print his name on the official ballot as the candidate of the Social Democratic party for the office of congressman from the Seventh congressional district. He was nominated at a convention held as prescribed in article 3 of the election law (chapter 909, Laws 1896). His certificate of nomination was rejected by the board of elections of its own motion, upon the ground that it did not appear that his nomination had been made by a party convention or an authorized committee thereof, and that the same was not in accordance with the requirements of law, the specific objection appearing to be that no transcript of the rules and regulations of the Social Democratic party was filed with the custodian of public records, and no certified copy of the records of the convention had been filed with such custodian. The election law does not require these rules, regulations, and records to be filed, the requirement therefor being found in the primary election law (Laws 1899, c. 473). The question, therefore, is whether, as to the Social Democratic party, the sections of the election law relating to primaries, conventions, and nominations have been repealed by the primary election law. The latter law prescribes very minutely and specifically how primaries and conventions shall be called and held, and how their results shall be certified. By its thirteenth section it is provided that no party which, at the last preceding election for governor, cast less than 3 per centum of the entire vote in the state for governor, shall be subject to the provisions of the act, unless on or before the 1st day of July in any year such party shall elect to come in under the same. The Social Democratic party at the last election for governor did cast less than 3 per centum of the entire vote cast in the state for governor, and it has not elected to come in under the primary election law. It is not, therefore, subject to the provisions of the act. The repealing clause of the act is carefully guarded. It provides that "all acts and parts of acts inconsistent with the provisions of this act are hereby repealed, in so far as they apply to the parties and in the places to which this act is, or shall be applied"; that is to say, that other acts remain unrepealed so far as they apply to parties to which the primary election law does not apply. By section 13 it does not apply to the Social Democratic party, and therefore as to that party former acts are not repealed. The election law (section 50 et seq.) contained provisions relating to primaries, conventions, and nominations, and with these provisions the Social Democratic party has complied. By section 56 party nominations by convention or authorized committee could be made by a political party which at the last preceding general election at which a governor was elected cast 10,000 votes in the state. It appears that the Social Democratic party, at the general election of the year 1900, at which a governor was elected, cast upwards of 10,000 votes. It is, therefore, under the terms of the election law, a political party authorized to nominate candidates by convention, and under the guarded language of the repealing clause of the primary election law these provisions of the election law remain unrepealed so far

as concerns the Social Democratic party. The petitioner's nomination having been properly made and certified, as prescribed by the election law, he is entitled to have his name printed upon the official ballot.

That primaries were advertised and held only in the county of Richmond, and in one of the assembly districts of the three, parts of which go to make up the congressional district, is not, I think, fatal to the petitioner's right. It appears that the Social Democratic party had no voters in the other two assembly districts, and in that case it would have been futile, if not impossible, to have held a primary election therein. The application must be granted, and the writ issued as prayed for.

Application granted, and writ issued.

---

(36 Misc. Rep. 709.)

### CITY REAL ESTATE CO. v. CLARK et al.

(Supreme Court, Special Term, New York County. January, 1902.)

**1. CLOUD ON TITLE—ACTION FOR RELIEF.**

The owner of land is entitled to relief from a cloud on title where there is a deed to the property valid on its face, together with a claim of title based on facts showing an apparent title, where the court can see that the apparent title is likely to injure the real owner of the property.

**2. SAME—EVIDENCE.**

A widow having title by adverse possession to property incorrectly described in a deed to her husband mortgaged it by a correct description, and on foreclosure the mortgagee, in 1879, bought the property and went into possession, but received no deed. The mortgagor in 1885 procured a reformation of the deed, and was adjudged owner of the premises. Afterwards, in the same year, the mortgagee procured an order in the foreclosure action for a delivery of a deed to her on payment of the amount due. In a subsequent action and on this motion it was declared that the mortgagee was not a mere mortgagee in possession. In 1894, while the mortgagee was still in possession, the mortgagor deeded the premises without consideration, to defendant; and the devisee of the mortgagor, in the action for reformation of the original deed, procured an order directing the referee in foreclosure to deliver to such grantee of the mortgagor a deed of the premises. Thereafter the mortgagee, having made the payments required by the order of 1885, received a deed. *Held*, that an action by such mortgagee to quiet title was maintainable.

**3. SAME—QUIETING TITLE.**

Though a deed from a mortgagor after foreclosure of the mortgage, and while the lands were in actual possession of the mortgagee, who had bought in foreclosure, was void, it was ground for an action to quiet title; it being valid on its face, and extrinsic evidence being necessary to show its invalidity.

Action by the City Real Estate Company against Jessie F. Clark and others to quiet title. Decree for plaintiff.

In 1845 one Alfred Lyon went into possession of the premises southeast corner of Bloomingdale road and 130th street, New York City, under a deed which by mistake only conveyed the southerly portion of said premises, and other premises which it was not intended to convey. In 1870 Hannah Lyon, his widow and devisee, mortgaged said corner premises by